**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

B&G EQUIPMENT COMPANY, INC.,

Plaintiff,

v.

AIROFOG USA, a Florida Limited Liability
Company,

Defendant.

Civil Action No.

## COMPLAINT

Plaintiff B&G Equipment Company, Inc. ("B&G" or "Plaintiff") seeks legal and

equitable remedies for violations of the Trademark Laws of the United States, 15 U.S.C. § 1051

et seq. (also referred to as the "Lanham Act").  This action also asserts related state claims under

both the statutory law and common law of the State of Florida.  Defendant AiroFog USA

("Defendant") is promoting, selling and offering for sale goods which are confusingly similar

imitations of Plaintiff's trademark goods.  In support of the aforementioned claims, Plaintiff

alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over all causes of action set forth herein

pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367, in that this is a civil action involving

claims arising under the laws of the United States, and/or involving claims between parties with

diversity of citizenship where the amount in controversy exceeds $75,000, wherein all other

state law claims are so related to claims within the Court's original jurisdiction that they form

part of the same case or controversy.

EAST\138153378.2

2.      This Court also has jurisdiction over the state law claims under the doctrine of supplemental jurisdiction, because the federal and state claims are based on the same operative facts, and judicial economy, convenience and fairness to the parties will result if this Court assumes and exercises jurisdiction over such state law claims.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391, because, Defendant resides in this District, and because some or all of Defendant's infringing activities set forth in this Complaint occurred within this District.

## PARTIES

4.      Plaintiff, B&G Equipment Company, Inc., (hereinafter referred to as "B&G") is a Delaware corporation, having a principal place of business at 135 Region South Drive, Jackson, Georgia, 30233.

5.      B&G is a manufacturer and seller of various pest control products, such as sprayers and parts therefor, throughout the United States to both pest control specialists and the consuming public at large, and has been in the business of manufacturing and selling such products since 1949.

6.      Upon information and belief, Defendant is a Florida Limited Liability Company with offices located at 15331 Flight Path Drive, Brooksville FL 34604.

7.      Upon information and belief, Defendant is a distributor of pest control products, including sprayers.

8.      Upon information and belief, Defendant distributes pest control products both within Florida, and throughout the United States.

## FACTUAL BACKGROUND

### *B&G's Trade Dress*

9.      B&G has been manufacturing and selling pest control products for over sixty-five (65) years.

10.     One of B&G's longest-running and most popular products is the B&G 'Sprayer' (hereinafter the "Sprayer"). An image of the Sprayer is shown below:



11.     In point of fact, the Sprayer was the corporate image for B&G for many years after it was first introduced, and continues to represent B&G's corporate image and brand to this day.

12.     The Sprayer comes in a variety of volumetric sizes (e.g., ½ Gallon, 1 Gallon, 2 Gallon, etc.), but each shares a common product configuration unique to B&G, including the following elements: (1) a cylindrical barrel; (2) circumferential rings extending around the barrel; (3) a slightly conical top member for the barrel; (4) a handle configuration incorporating a tubular gripping portion and a semicircular support member connecting the gripping portion to

a pump portion of the barrel; (5) a sprayer wand with an obtusely angled tip portion; and (6) a diagonal mounting pocket for the sprayer wand affixed to the barrel.

13.     In 2007, B&G obtained two (2) Trademark Registrations on the Sprayer: (1) U.S. Reg. No. 3,210,240 (for the Sprayer including the words "B&G" stamped thereon) and (2) U.S. Reg. No. 3,239,891 (for the Sprayer body alone) (collectively, the "Trademark Registrations"). Copies of the Trademark Registrations are attached hereto as <u>Exhibit A</u>.

14.     The Trademark Registrations became incontestable on April 18, 2012 and January 2, 2013. respectively.  Copies of the U.S. Trademark Office's Acceptances of B&G's Declarations of Incontestability are attached hereto as <u>Exhibit B</u>.

15.     In addition to B&G's federally registered rights as set forth in the Trademark Registrations, B&G has common law trademark and trade dress rights in the combination of unique and ornamental features that comprise the Sprayer, including: (1) a cylindrical barrel; (2) circumferential rings extending around the barrel; (3) a slightly conical top member for the barrel; (4) a handle configuration incorporating a tubular gripping portion and a semicircular support member connecting the gripping portion to a pump portion of the barrel; (5) a sprayer wand with an obtusely angled tip portion; and (6) a diagonal mounting pocket for the sprayer wand affixed to the barrel, which holds the sprayer wand generally upright when mounted on the barrel (collectively, the "Sprayer Trade Dress").

16.     The Sprayer Trade Dress is purely aesthetic, and non-functional.

17.     B&G first sold a sprayer including all the elements of the Sprayer Trade Dress in 1962.

18.     Since 1962, B&G has continuously and actively marketed sprayers including the Sprayer Trade Dress in interstate commerce.

EAST\138153378.2

19.     The Sprayer Trade Dress has acquired secondary meaning through over fifty (50) years of substantially continuous and exclusive use in the marketplace.

20.     Since B&G's first sprayer sale in 1962, B&G has enjoyed the goodwill associated with the Sprayer Trade Dress, and greatly values such goodwill.

21.     Customers within the pest control industry associate the Sprayer Trade Dress exclusively with B&G.

22.     In addition to the Sprayer, B&G manufactures and sells various other products that customers within the pest control industry associate exclusively with B&G due to their unique design.

23.     One is the Aerosol Delivery Unit, a hand-held device that easily attaches to the top of an aerosol can, and allows the simple application of pest control products from the aerosol can (shown below, and hereinafter the "ADU").



24.     The ADU includes a combination of unique and ornamental features, including: (1) a circular ring clamp with a ball valve actuator that clamps on an aerosol can, (2) a colored recoiling type hose that connects the circular ring clamp to a spray valve, and (3) a spray valve

that is tubular in shape and of a size small enough to fit in the palm of the user's hand. (collectively, the "ADU Trade Dress").

25.     The ADU Trade Dress is purely aesthetic, and non-functional.

26.     B&G first sold an aerosol delivery device including all the elements of the ADU Trade Dress in June 2007.

27.     Since June 2007, B&G has continuously and actively marketed aerosol delivery devices including the ADU Trade Dress in interstate commerce.

28.     The ADU Trade Dress has acquired secondary meaning through over nine (9) years of substantially continuous and exclusive use in the marketplace.

29.     Since B&G's first sale in June 2007, B&G has enjoyed the goodwill associated with the ADU Trade Dress, and greatly values such goodwill.

30.     Customers within the pest control industry associate the ADU Trade Dress exclusively with B&G.

31.     Another one B&G's unique products that customers within the pest control industry associate exclusively with B&G is the Series 400 Termite Tool, a device for delivering pesticides several feet underground (shown below, and hereinafter the "TT 400").



32.     The TT 400 includes a combination of unique and ornamental features, including: (1) a "T"-shaped handle; (2) a stainless steel trigger about half the overall length of the "T"-shaped handle; (3) a triangular foot ram with a black cone seal and a large brass locking knob (collectively, the "TT 400 Trade Dress").

33.     The TT 400 Trade Dress is purely aesthetic, and non-functional.

34.     B&G first sold a termite control device including all the elements of the TT 400 Trade Dress in 2000.

35.     Since 2000, B&G has continuously and actively marketed termite control devices including the TT 400 Trade Dress in interstate commerce.

36.     The TT 400 Trade Dress has acquired secondary meaning through over 16 years of substantially continuous and exclusive use in the marketplace.

37.     Since B&G's first sale in 2000, B&G has enjoyed the goodwill associated with the TT 400 Trade Dress, and greatly values such goodwill.

38.     Customers within the pest control industry associate the TT 400 Trade Dress exclusively with B&G.

### *Defendant's Copycat Products*

39.     Upon information and belief, at least as early as October 2014, Defendant began selling a sprayer (hereinafter the "AF Sprayer") with a design that blatantly copied the design of the B&G Sprayer.

40.     Upon information and belief, prior to 2014, a Chinese company also called AiroFog ("AiroFog China") had been trying to sell a sprayer similar in design to the AF Sprayer through various distribution channels in the United States.

41.     Upon information and belief, after failing to gain traction in the United States through standard distribution channels in the pest control industry, AiroFog China decided to set up its own U.S. distributor, namely, Defendant.

42.     Shown below are images of the B&G Sprayer (right) and the AF Sprayer (left), arranged side-by-side.

 

43.     As shown above, the design of the AF Sprayer is substantially identical to that of the B&G Sprayer.

44.     At the time the AF Sprayer was first introduced (2014), the B&G Sprayer had been on sale for over fifty (50) years, and B&G had accumulated substantial goodwill in the design of the Sprayer.

45.     The AF Sprayer includes all the features shown in the Trademark Registrations, with the exception of the word "B&G" on the barrel (which has been replaced with the word "AiroFog").

46.     The AF Sprayer includes all the elements of the Sprayer Trade Dress.

47.     Upon information and belief, at least as early as 2014, Defendant began selling an aerosol delivery device (hereinafter the "AF Aerosol Device"), having a design identical to that of the B&G ADU.

48.     Shown below are images of the B&G Sprayer (right) and the AF Aerosol Device (left), arranged side-by-side.




49.     As shown above, the design of the AF Aerosol Device is substantially identical to that of the B&G ADU that had been on sale for over 7 years prior to the introduction of the AF Aerosol Device.

50.     The AF Sprayer includes all the elements of the ADU Trade Dress.

51.     Upon information and belief, at least as early as 2014, Defendant began selling an termite control device (hereinafter the "AF Injector"), having a design identical to that of the B&G TT 400.

52.     Shown below are images of the B&G TT400 (top) and the AF Injector (bottom), arranged side-by-side.





53.     As shown above, the design of the AF Injector is substantially identical to that of the B&G TT 400 that had been on sale for over 14 years prior to the introduction of the AF Injector Device.

54.     The AF Injector includes all the elements of the TT 400 Trade Dress.

55.     Upon information and belief, Defendant had knowledge of B&G's Sprayer, ADU and TT 400 products prior to the development of the AF Sprayer, AF Aerosol Device and AF Injector (collectively, the "Infringing Products").

56.     Upon information and belief, Defendant had knowledge that the unique product configuration of B&G's Sprayer, ADU and TT 400 products were subject to intellectual property protection prior to the development of the Infringing Products.

57.     B&G and Defendant share the same channels of trade with respect to their products.

58.     B&G and Defendant have attended the same trade shows in the past.

59.     B&G and Defendant target the same end customers, namely, Pest Control Operators (PCOs).

60.     Defendant is infringing, and will continue to infringe, B&G's intellectual property rights in the Trademark Registrations, and in the Sprayer Trade Dress, ADU Trade Dress and TT 400 Trade Dress (collectively, the "B&G Trade Dress"), unless enjoined by this Court.

61.     Upon information and belief, Defendant will continue to willfully infringe B&G's intellectual property rights in the Trademark Registrations and B&G Trade Dress, unless enjoined.

62.     Many alternative ornamental designs exist in the marketplace for pest control products, such that Defendant did not need to copy the designs for B&G's Sprayer, ADU and TT 400 products in order to compete.

63.     Defendant's copying of the designs for B&G's Sprayer, ADU and TT 400 products permitted Defendant to make virtually no investment in product design and development with respect to the Infringing Products, and also allowed Defendant to benefit from the substantial goodwill B&G has accumulated in the marketplace.

64.     Upon information and belief, Defendant introduced the Infringing Products with an intention to trade off B&G's long-standing goodwill, in order to cause confusion in the marketplace for pest control products, and to lead customers to believe that Defendant's products are sponsored by, or affiliated with, B&G.

## COUNT I

Trademark Infringement Under Section 32 of the Lanham Act

65.     B&G restates and incorporates by reference Paragraphs 1 to 64 above, as if set forth fully in this Count.

66.     B&G owns all right, title and interest in and to the Trademark Registrations.

67.     Defendant is improperly and willfully infringing the Trademark Registrations in interstate commerce through the advertising, promotion, sale and distribution of the AF Sprayer.

68.     The AF Sprayer is a counterfeit copy of B&G's genuine Sprayer.

69.     Defendant's use in interstate commerce of the product designs that are virtually identical to the product configuration described in the Trademark Registrations is likely to cause confusion or deception of consumers as to the source, origin, or sponsorship of the products in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).  Particularly, customers are likely to purchase Defendant's sprayer products believing them to be those of B&G, thereby resulting in a loss of goodwill and sales to B&G.

70.     Defendant's conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

71.     As a direct and proximate result of Defendant's conduct, B&G has been, and is likely to be, substantially injured in its business including harm to its goodwill and reputation and the loss of revenues and profits.

72.     B&G has no adequate remedy at law, and unless enjoined by this Court, Defendant will continue to engage in such acts of trademark infringement, to the irreparable damage and injury of B&G.

73.     Upon information and belief, Defendant has engaged in the above-referenced acts of trademark infringement with full knowledge of B&G's exclusive rights in the Trademark

- 12 -

Registrations, and Defendant continues in such acts of intentional infringement, thus making this case exceptional and entitling B&G to an award of treble its actual damages, plus attorneys' fees in bringing and maintaining this action.

## COUNT II

### Unfair Competition by False Designation of Origin Under Section 43(a) of the Lanham Act

74.     B&G restates and incorporates by reference Paragraphs 1 to 73 above, as if set forth fully in this Count.

75.     The designs reflected in the Trademark Registrations acts as indicators of source and/or origin, and have acquired distinctiveness via secondary meaning.

76.     The Trademark Registrations are valid and subsisting, and incontestable.

77.     The designs reflected in the Trademark Registrations are non-functional and distinctive in the minds of the relevant purchasers of B&G's goods and services as being associated exclusively with B&G.

78.     The B&G Trade Dress collectively operates as an indicator of source and/or origin, and has acquired distinctiveness via secondary meaning.

79.     The Sprayer Trade Dress is valid and subsisting, and has been in continuous and exclusive use throughout the United States, by B&G, since at least as early as 1962.

80.     The ADU Trade Dress is valid and subsisting, and has been in continuous and exclusive use throughout the United States, by B&G, since at least as early as 2007.

81.     The TT 400 Trade Dress is valid and subsisting, and has been in continuous and exclusive use throughout the United States, by B&G, since at least as early as 2000.

82.     The B&G Trade Dress is collectively non-functional and distinctive in the minds of the relevant purchasers of B&G's goods and services as being associated exclusively with B&G.

83.     Defendant, through their use, display and copying of the designs of B&G's unique products (including the Sprayer, ADU and TT 400), has without authorization, in connection with their goods and/or services in commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of Defendant with B&G, and/or as to the origin, sponsorship or approval of Defendant's goods and/or services, in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

84.     Consumers are likely to purchase pest control products such as the Infringing Products from Defendant believing that Defendant is affiliated, connected or associated with B&G, resulting in a loss of goodwill to B&G.

85.     Defendant's acts as set forth herein constitute unfair competition, and/or induce or contribute to acts of unfair competition.

86.     Defendant's unfair acts have been committed in bad faith and with the intent to cause confusion, mistake and/or to deceive.

87.     As a direct and proximate result of Defendant's conduct, B&G has been, and is likely to be, substantially injured in its business including harm to its goodwill and reputation and the loss of revenues and profits.

88.     B&G has no adequate remedy at law because the designs reflected in the Trademark Registrations and in the B&G Trade Dress are unique and represent to the public B&G's identity, reputation, and goodwill, such that damages alone cannot fully compensate B&G for Defendant's misconduct.

89.     Unless enjoined by this Court, Defendant and those acting in concert with them will continue to infringe B&G's intellectual property rights, to B&G's irreparable injury.  This threat of future injury to B&G's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued use of the designs reflected in the Trademark Registrations and in the B&G Trade Dress, and/or product configurations confusingly similar thereto, and to ameliorate and mitigate B&G's injuries.

90.     Upon information and belief, Defendant has engaged in the above-referenced acts of unfair competition with knowledge of B&G's exclusive rights, and Defendant will continue in such acts unless enjoined by this Court.

## COUNT III
### Unfair Competition (Florida Common Law)

91.     B&G restates and incorporates by reference Paragraphs 1 through 90 above, as if set forth fully in this Count.

92.     B&G owns and enjoys common law trademark rights in the shape and design of its products (including those designs reflected in the Trademark Registrations, and in the B&G Trade Dress) in the State of Florida, and throughout the United States.

93.     The designs reflected in the Trademark Registrations, and in the B&G Trade Dress operate as indicators of source and/or origin, particularly when used in interstate commerce.  Moreover, these designs have acquired distinctiveness via secondary meaning.

94.     Defendant, through their use, display and copying of the designs reflected in the Trademark Registrations, and in the B&G Trade Dress, has without authorization, in connection with their goods and/or services in commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the

- 15 -

affiliation, connection or association of Defendant with B&G, and/or as to the origin,

sponsorship or approval of Defendant's goods and services in violation of the common law of

the State of Florida.

95.     Consumers are likely to purchase pest control products from Defendant believing

that Defendant is affiliated, connected or associated with B&G, resulting in a loss of goodwill to

B&G.

96.     Defendant's acts as set forth herein constitute unfair competition, and/or induce or

contribute to acts of unfair competition.

97.     Defendant's unfair acts have been committed in bad faith and with the intent to

cause confusion, mistake and/or to deceive.

98.     As a direct and proximate result of Defendant's conduct, B&G has been, and is

likely to be, substantially injured in its business including harm to its goodwill and reputation

and the loss of revenues and profits.

99.     Upon information and belief, Defendant's acts of unfair competition are, and have

been, oppressive, fraudulent and malicious, thus entitling B&G to punitive damages.

100.    B&G has no adequate remedy at law because the designs reflected in the

Trademark Registrations, and in the B&G Trade Dress, are unique and represent to the public

B&G's identity, reputation, and goodwill, such that damages alone cannot fully compensate

B&G for Defendant's misconduct.

101.    Unless enjoined by this Court, Defendant and those acting in concert with them

will continue to infringe B&G's intellectual property rights, to B&G's irreparable injury.  This

threat of future injury to B&G's business identity, goodwill, and reputation requires injunctive

relief to prevent Defendant's continued use of the designs reflected in the Trademark

Registrations, and the B&G Trade Dress, and/or product configurations confusingly similar thereto, and to ameliorate and mitigate B&G's injuries.

102.     Upon information and belief, Defendant has engaged in the above-referenced acts of unfair competition with knowledge of B&G's exclusive intellectual property rights, and Defendant will continue in such acts unless enjoined by this Court.

## COUNT IV

### Violation Of Florida Deceptive And Unfair Trade Practices Act

103.     B&G restates and incorporates by reference Paragraphs 1 through 102 above, as if set forth fully in this Count.

104.     Defendant's use of the designs reflected in the Trademark Registrations, and the B&G Trade Dress, or colorable imitations thereof, constitute deceptive and unfair practices under Florida's Deceptive and Unfair Trade Practices Act (F.S.A. § 501.201 *et seq.*).

105.     Specifically, Defendant's use of the designs reflected in the Trademark Registrations, and the B&G Trade Dress, and attempt to profit from the sale of the Infringing Products to third parties go against public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

106.     As a direct result of Defendant's deceptive and unfair practices, B&G has been, and continues to be, damaged by Defendant's use of the designs reflected in the Trademark Registrations, and the B&G Trade Dress, and attempts to profit from the sale of the Infringing Products.

## COUNT V

### Unjust Enrichment

107.     B&G restates and incorporates by reference Paragraphs 1 through 106 above, as if set forth fully in this Count.

EAST\138153378.2

108.     B&G has invested substantial time, labor and money in the design and production of the Sprayer, ADU and TT400 products.

109.     Defendant has wrongfully misappropriated the unique features of these products (as reflected in the Trademark Registrations, and the B&G Trade Dress), and has profited from and received certain other benefits as a result of such wrongful misappropriation.

110.     Defendant has been unjustly enriched at B&G's expense.

111.     It would be inequitable to allow Defendant to retain the profits and other benefits it acquired through its wrongful actions.

**WHEREFORE**, for the foregoing reasons, Plaintiff B&G Equipment Company, Inc. respectfully requests that this Court enter preliminary and permanent injunctive relief against Defendant AiroFog USA, as well as its employee and/or agents, awarding the following relief:

A.     Entry of a judgment that:

      1.     Defendant has infringed B&G's federal trademark rights in the Trademark Registrations;

      2.     Defendant's sale of the Infringing Products including the designs set forth in the Trademark Registrations, and in the B&G Trade Dress, constitutes unfair competition under Section 43(a) of the Lanham Act;

      3.     Defendant has engaged in common law unfair competition, through the sale of the Infringing Products including the designs set forth in the Trademark Registrations, and in the B&G Trade Dress;

      4.     Defendant has engaged in deceptive and unfair trade practices in the State of Florida (under the Deceptive and Unfair Trade Practices Act), through the sale of the Infringing Products including the designs set forth in the Trademark Registrations, and in the B&G Trade Dress; and,

      5.     Defendant has been unjustly enriched by the sale of the Infringing Products.

B.     Entry of judgment that Defendant's acts of trademark infringement and unfair competition detailed herein have been, and continue to be, willful and deliberate.

C.      Entry of preliminarily and permanent injunctions enjoining Defendant, their agents, servants and employees, and those people in active concert or participation with it from:

   1.      using, infringing, contributing to, or inducing infringement of the B&G's registered and common law trademarks and service marks, including but not limited to the Trademark Registrations and the B&G Trade Dress;

   2.      using any false designation, description or representation regarding the source or sponsorship of its goods and/or services, or stating or implying that Defendant or its agents are connected with the goods and/or services of B&G, thereby damaging B&G's goodwill and reputation;

   3.      causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendant's business and/or Defendant's goods or services, including but not limited to causing a likelihood of confusion or misunderstanding as to Defendant's affiliation, connection or association with B&G or any of B&G's goods and/or services; and,

   4.      otherwise infringing B&G's common law and registered trademarks and service marks, or otherwise unfairly competing with B&G.

D.      Entry of judgment requiring Defendant to offer up for destruction all articles, displays, advertisements, labels, signs, prints, packages, packaging, wrappers, receptacles, brochures, catalogs, plates, molds, uniforms, and logo items in its possession or control which display a product which is identical to, or confusingly similar with, B&G's protected product configuration trade dress as set forth in the Trademark Registrations, as provided by Section 36 of the Lanham Act (15 U.S.C. §1118).

E.      Entry of judgment requiring Defendant to file with the Court and to serve upon B&G's counsel within thirty (30) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which it has complied with such injunction or order pursuant to Section 34 of the Lanham Act (15 U.S.C. §1116(a)).

F.      Entry of judgment:

1.      awarding B&G such actual damages as it has sustained by reason of Defendant's acts of trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. §1114) (including, but not limited to, a disgorgement of Defendant's profits, B&&G's lost profits, and the costs of this action);

2.      awarding B&G treble its actual damages for such trademark infringement;

3.      awarding B&G its attorney's fees in bringing and maintaining this action, which should be deemed exceptional, for such trademark infringement; and

4.      requiring Defendant to account to B&G for any and all profits derived by it from sales of the Infringing Products, and to compensate B&G for all damages sustained by reason of such trademark infringement and the other acts complained of herein; all pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

G.      Entry of judgment:

1.      awarding B&G such actual damages as it has sustained by reason of Defendant's acts of unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. §1125(a)(1)(A)) (including, but not limited to, a disgorgement of Defendant's profits, B&G's lost profits, and the costs of this action);

2.      awarding B&G treble its actual damages or such acts of unfair competition;

      3.      awarding B&G its attorney's fees in bringing and maintaining this action, which should be deemed exceptional, for such acts of unfair competition; and

      4.      requiring Defendant to account to B&G for any and all profits derived by it from sales of the Infringing Products, and to compensate B&G for all damages sustained by reason of such acts of unfair competition and the other acts complained of herein; all pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

H.     Entry of judgment ordering Defendant to compensate B&G for the advertising or other expenses necessary to dispel any confusion caused by Defendant's trademark infringement, unfair competition and other unlawful acts (including but not limited to the costs of an appropriate corrective advertising campaign), pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

I.     Entry of judgment awarding B&G such damages as it has sustained by reason of Defendant's acts of common law unfair competition, including but not limited to compensatory damages, attorneys' fees, costs and/or punitive damages.

J.     Entry of judgment awarding B&G such damages as it has sustained by reason of Defendant's deceptive and unfair trade practices, including but not limited to compensatory damages, attorneys' fees, costs and/or punitive damages.

K.     Entry of judgment awarding B&G the amount of Defendant's unjust enrichment.

EAST\138153378.2

L.      Affording B&G such further and other relief as this Court may deem just and proper.


Dated:  December 16, 2016

Respectfully submitted,

**DLA PIPER LLP (US)**


*/s/ Jeremy T. Elman*_____
Jeremy T. Elman
Fla. Bar No. 37448
DLA Piper LLP (US)
200 South Biscayne Boulevard
Miami, Florida 33131
Suite 2500
Telephone: (305) 423-8514
Facsimile: (305) 503-7551
Email: jeremy.elman@dlapiper.com

ATTORNEYS FOR PLAINTIFF

OF COUNSEL
Darius C. Gambino (PA 83496)
1650 Market St., Suite 4900
Philadelphia, PA 19103
Telephone: (215) 656-3300
Facsimile:  (215) 656-3301
Email: darius.gambino@dlapiper.com